# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| RAVEN RAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 2:08-CV-3512-PMD |
| v. ) | |
| ) | |
| ROBIN L. BOWERS, in his individual ) | **ORDER** |
| Capacity, and THE COLLEGE OF ) | |
| CHARLESTON ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the court upon Defendant the College of Charleston's ("the College") Motion for Summary Judgment as to Plaintiff Raven Ray's ("Ray") claims against it arising from the alleged sexual harassment of Ray by Bowers. Ray's claims against Bowers include a civil rights violation pursuant to 42 U.S.C. § 1983 and state law claims of battery, harassment, stalking, intentional infliction of emotional distress, and assault. Ray brings a claim under Title IX against the College. Bowers has asserted a counterclaim against Ray for defamation. For the reasons set forth below, the court grants the College's Motion for Summary Judgment.

## BACKGROUND

Ray graduated from the College of Charleston in May of 2007 with a Bachelor of Science in Psychology. During the fall 2006 semester of her senior year, Ray enrolled in Advanced General Psychology, PSYC 396, which was taught by Defendant Bowers. *Am. Compl.* at ¶ 15. Ray was twenty-one years old at the time. In October of 2006, Ray invited Bowers to attend a Halloween party at her apartment. *Pl. Dep.* at 51. Bowers attended the Halloween party, and the

two developed a relationship which allegedly involved into a sexual relationship beginning on October 31, 2006 and continuing throughout the fall 2006 semester. *Id.* at 72-82. Ray claims that she felt powerless to end the sexual relationship and harassing text messages by Bowers because of fear that he would sabotage her grade or otherwise retaliate against her. Throughout the semester, Ray "pretended like everything was fine, even with my family" and did not inform the College about Bower's alleged sexual harassment or inappropriate behavior. *Id.* at 129. Additionally, Ray stated that she "tried to make [Bowers] think that, you know, I liked him" and that she "just wanted to make him calm, you know, until the end of the semester so I could get my grade." *Id.* at 181. On December 14, 2006, Bowers posted grades for Ray's psychology class, and Ray received an "A" for the course, a grade which all parties agree was appropriate. Ray and Bowers continued to text message and call each other even after Bowers had posted Ray's grade.

Ray claims that Bower's harassment consisted of three types of conduct: (1) an unwanted sexual relationship between Bowers and Ray; (2) harassing conduct in the classroom environment; and (3) harassing messages and postings via text messages and internet postings. *Pl. Opp'n Mem.* at 9. Besides Ray's claim that she and Bowers had a sexual relationship, Ray claims that Bowers created a hostile environment for her as a student in his class by staring at her in class and by ignoring Ray in class on one occasion where Ray was the only one with her hand raised and Bowers refused to call on her, which according to Ray was because she had not returned Bowers text message the night before that class. *Pl. Dep.* at 134-36. Ray also claims that Bowers sent her harassing text messages. Ray saved approximately 102 text messages sent by Bowers to Ray; however, Ray's cell phone records show that she sent Bowers approximately 950 text messages from October 27, 2006 through January 31, 2007 of which she saved the

content of only one of those messages. Ray claims that Bowers sent her thousands of text messages during the same time period; however, she selectively saved only 102 of those messages. Lastly, Ray claims that Bowers harassed her by posting a lewd song dedicated to her on the internet.

On January 10, 2007, Ray reported to the College that Bowers had been sexual harassing her. Ray admits that this was the first time she reported any problem to the College and the first time she gave the College an opportunity to help her. *Id.* at 237-42. Ray stated that she was concerned that if she told the College what was happening during the semester, the College might remove her from the class and she would have to take a "W" (withdraw/no grade). *Id.* at 242. Ray stated that she "had to make sure I got my grade so I could graduate on time." *Id.*

Ray initially reported her complaint to Jane Corbin ("Corbin"). Corbin immediately set up an appointment for the next day with Denise Mitchell ("Mitchell"), whose job included receiving and investigating such complaints. Mitchell first met with Ray on January 11, 2007. *Id.* at 161-62. Ray stated that Mitchell "thanked me for being strong and for coming forward." *Id.* at 239. Mitchell worked with Ray to forward the few text messages that Ray had saved from Bowers so that the messages could be preserved as evidence. *Id.* at 30. Mitchell also arranged for a sworn statement on January 19, 2007 to fully document Ray's complaint. Ultimately, the College discharged Bowers as a result of Ray's complaint.

In addition to investigating Ray's complaint and discharging Bowers, the College took additional steps to help Ray. Ray states that she was assigned to a special advisor, Pam Neisslein ("Neisslein), who "was very nice to [Ray]." *Id.* at 237. Neisslein and her husband took Ray on outings, invited her to stay at their home if she was afraid to be alone, and tried to be a support

3

source for her. *Id.* The College, through its C.A.R.E. office, provided Ray with other assistance as well:

- The College offered her a free room on campus with parking when she told them she was frightened of Bowers (Ray declined the offer because she believed the offer was limited to one week only);
- The College assigned campus police escorts which Ray could use at any time;
- The College notified all of Ray's Spring semester professors that she was being assisted with a traumatic experience and obtained each professor's agreement to work with her regarding things like deadlines and absences; and
- The College offered to call a local judge to check on the possibility of getting Ray a restraining order against Bowers.

*Id.* at 164-66.

Later in the semester, Ray asked (through her therapist) that she be allowed to complete her remaining course work by computer from home so that she did not have to go on campus. *Id.* at 294-96. The College agreed, arranged for Ray to complete her remaining course work from home, and provided Ray a free tutor. *Id.* The College also paid for Ray to be tested for any sexually transmitted diseases to which Bowers might have exposed her. *Id.* The College also offers free counseling on campus, but Ray declined the free counseling because she already had a relationship with her own therapist. Although Ray admits that the College took all of these measures, she contends that the College did not do enough. Ray claims that the College should have paid for her private therapist and her text message bills. *Id.* at 241. Ray also believes that the College should have removed Bowers from his spring semester class even though the investigation was still pending. *Id.* at 168.

On October 16, 2008, Ray filed this suit against Bowers and the College. Ray's claims against Bowers include a civil rights claim under § 1983 and state law claims of battery, harassment, stalking, intentional infliction of emotional distress, and assault. Ray asserts a Title

4

IX claim against the College. Bowers has asserted a counterclaim against Ray for defamation. On October 9, 2009, the College filed a motion for summary judgment.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## ANALYSIS

In its memorandum in support of its motion for summary judgment, the College argues that the court should dismiss Ray's Title IX claim against the College because Ray has not established evidence that the College had actual notice of the alleged sexual harassment or that the College was deliberately indifferent after Ray filed her complaint, both of which are essential elements of Ray's claim under Title IX. As additional grounds for dismissal, the College argues that Ray has failed to make a showing to establish any evidence that Bowers' conduct was unwelcome.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.A. § 1681(a). This prohibition encompasses sexual harassment of a student by a teacher and is enforceable through a judicially implied private right of action for damages against a school district. *See Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 75-76 (1992).

To establish a Title IX claim on the basis of sexual harassment, Ray must show that (1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution. *Jennings v. University of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007). With respect to the fourth element which requires a basis for imputing liability to the institution, the College can be held liable for a Title IX violation only if "an official who . . . has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination in the [College's] programs and fails adequately to respond" or displays "deliberate indifference" to discrimination. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

The College argues that Ray has failed to show that the College had actual knowledge of alleged sexual harassment by Bowers or that the College was deliberately indifferent to or failed to adequately respond to the discrimination. The College also argues that Ray is unable to show that she was subjected to sexual harassment because Ray has not offered any evidence to show that Bower's conduct was unwelcome. Without deciding whether Bower's conduct was unwelcome and therefore sexual harassment, the court finds that Ray has failed to establish a

6

basis for imputing liability to the institution because Ray has failed to show that the College had actual knowledge of the alleged harassment or that it failed to adequately respond.

"Title IX conditions 'an offer of funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds.' *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 286 (1998). In *Gebser,* the Supreme Court explained that the contractual nature of Title IX requires that a funding recipient have notice that it may be liable for a monetary award, *i.e.,* it must actually be aware of the discrimination and fail to remedy it. *See id.* at 287-88. In other words, [the College] may be held liable under Title IX 'only for its own misconduct;' the implied damages remedy is available only when 'the funding recipient engages in intentional conduct that violates the clear terms of the statute.' *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 640, 642 (1999)." *Baynard v. Malone*, 268 F.3d 228, 237 (2001).

In *Gebser*, the Supreme Court expressly rejected the use of "principles of *respondeat superior* or constructive notice" for imposing liability under Title IX. *Gebser,* 524 U.S. at 285. Rather, the Court held in *Gebser* that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [College's] behalf has actual knowledge of discrimination in the [College's] programs" and is deliberately indifferent to it. *Id.* at 290. As to what constitutes "deliberate indifference" for Title IX purposes, the Supreme Court found that "[t]he premise [of deliberate indifference], in other words, is an official decision by the [College] not to remedy the violation."[1] *Id.* The Supreme Court noted that "[u]nder a lower standard, there would be a risk

---

[1] For an example of deliberate indifference see *Jennings v. University of North Carolina*, 482 F.3d 686, 700-01 (4th Cir. 2007) (finding deliberate indifference where Plaintiff went directly to the individual who was both UNC's highest-ranking lawyer and the school's official responsible for fielding sexual harassment complaints and when Plaintiff told the official about the specific harassment she was experiencing at the hands of her coach, the

that the [College] would be liable in damages not for its own official decision but instead for its employees' independent actions." *Id.*

In *Baynard v. Malone*, 268 F.3d 228 (4th Cir. 2001), the United States Court of Appeals for the Fourth Circuit applied the Supreme Court's holding in *Gebser* and clarified the actual notice an educational institution must receive to be liable under Title IX for sexual harassment of a student by one of its employees. The Fourth Circuit found that Title IX's actual notice requirement *cannot* be satisfied by "actual notice of a substantial risk of ongoing sexual abuse." *Id.* at 237-38. Rather, the Court held that "*Gebser* is quite clear, however, that Title IX liability may be imposed only upon a showing that the [school] officials possessed actual knowledge of the discriminatory conduct in question." *Id.* Further, the Fourth Circuit found that "[t]o the extent there is any doubt about the nature of the actual notice requirement articulated in *Gebser*, it is removed by the subsequent opinion of the Court in *Davis*" where the Supreme Court held that an educational institution cannot be held "liable for its failure to react to teacher-student harassment of which it knew or *should have known* . . . rather [the educational institution] could be liable for damages only where the [institution] itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment *of which it had actual knowledge*." *Id.* (citing *Davis v. Monroe County Bd. Of Educ.*, 526 U.S. 629, 641 (1999)).

The College argues and the court agrees that Ray has not established that the College was deliberately indifferent to actual notice of sexual harassment of a student by Bowers. Ray admits that she did not report Bower's alleged sexual harassment of her until January 10, 2007. Ray also admits that the College did not have any notice of sexual harassment of her or any student

---

official suggested that Plaintiff work it out with the coach directly because he was "a great guy." The official took no action on the complaint, and the harassment continued.)

during the time period in which Ray claims to have been harassed. Additionally, as soon as Ray informed the College of harassment by Bowers, the College took immediate steps to investigate the complaint, protect Ray from any further possible harm, and assist Ray with various personal needs. At the end of its investigation, the College concluded that Bowers had acted inappropriately with regard to Ray, and the College discharged Bowers from his tenured position. The College also has a policy prohibiting sexual harassment, including unwelcome sexual advances. The policy is published to all students online and includes instructions for reporting violations. The College also has a policy prohibiting consensual sexual relationships between professors and students currently in their classes or assigned to them as advisors. As soon as the College had actual notice of sexual harassment of a student by Bowers, the College took extensive measures to remedy the situation and is therefore not to be held liable under Title IX.

Ray argues that the court should ignore the Fourth Circuit's requirement that the College have actual notice of the sexual harassment *in question* and apply a more liberal notice standard recognized by the *Baynard* dissent and by other circuits, which requires that the College have only actual knowledge of *a substantial risk* of sexual harassment. Citing the *Baynard* dissent, Ray states that "[a]n appropriate official has actual knowledge of a substantial risk if she knows of facts indicating a substantial risk and she subjectively believes that the facts signal such a risk." *Pl. Opp'n Mem.* at 7. Ray then argues that a number of prior complaints against Bowers gave the College actual knowledge of a substantial risk of sexual harassment; however, Ray does not contend that she has satisfied the notice standard under the controlling Fourth Circuit standard announced in *Baynard.* As noted above, Ray admits that the College had no knowledge of sexual harassment by Bowers against Ray or anyone else during the time period of the alleged

harassment. As noted above, under the Fourth Circuit's test, "Title IX liability may be imposed only upon a showing that the [school] officials possessed actual knowledge of the discriminatory conduct in question." *Baynard v. Malone*, 268 F.3d at 237-38. Therefore, under controlling law in this circuit, the College was not on notice of sexual harassment by Bowers until Ray reported Bowers in January of 2006, after which the College took immediate action to investigate and discharge Bowers.

Therefore the court finds that until January 10, 2006 when Ray reported Bowers to the College, there is no evidence in the record to support a conclusion that the College was *in fact* aware that a student was being sexually harassed. The court also finds that as soon as Ray notified the College that she was being sexually harassed by Bowers, the College took immediate steps to remedy the violation including investigating and discharging Bowers.

## **CONCLUSION**

Based on the foregoing, the court **ORDERS** that Defendant College of Charleston's Motion for Summary Judgment be **GRANTED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**November 23, 2009**
**Charleston, SC**